Curtis PRIDE, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Etc.,
Respondent-Appellee.

No. 80–1488.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 30, 1981.

Erik S. Goodman, Staff Counsel for Inmates, Texas Dept. of Corrections, Sugarland, Tex., for petitioner-appellant.

Sam L. Jones, Leslie A. Benitez, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before BROWN and TATE, Circuit Judges, and SMITH *, District Judge.

TATE, Circuit Judge:

The petitioner Pride prays for federal habeas corpus relief pursuant to 28 U.S.C. § 2254, with regard to his Texas state court conviction for aggravated robbery. The essence of Pride's asserted bases for relief—in both the state habeas corpus proceedings and the federal proceedings below—is that he was in fact incompetent to stand trial, despite a jury verdict to the contrary at his state pretrial competency hearing. The federal district court denied the writ of habeas corpus without a hearing. On appeal, we find that the petitioner raised a real, substantial and legitimate doubt as to his mental competency at his state trial, thus warranting a federal evidentiary hearing on his competency in fact at the time he was tried in state court for the state offense. The case will be remanded to the district court for disposition consistent with this opinion.

---

* District Judge of the Northern District of Mississippi, sitting by designation. Judge Orma R. Smith was a member of the panel that heard oral arguments but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

*The Proceedings Below*

On July 21, 1975, following Pride's indictment under Texas criminal law for aggravated robbery but prior to trial on the crime charged, a jury trial was held to determine the sole issue of Pride's competency to stand trial. At that hearing, the petitioner presented the expert testimony of a state-employed psychiatrist, Dr. Kreimeyer, in support of his claim of incompetency. Dr. Kreimeyer testified that, based on a four-hour period of mental evaluation occurring two and one-half months prior to the competency hearing, Pride was incompetent to stand trial due to mental retardation and a paranoid schizophrenic condition.

The state countered with the expert testimony of a psychiatrist, Dr. Grice, who had examined the petitioner three years earlier in connection with a back injury Pride complained of at the time. Dr. Grice concluded that Pride was then neurotic, but neither psychotic nor mentally retarded. Based on this approximately two hour exam three years earlier as well as upon a brief conversation with Pride immediately prior to his testimony at the competency hearing, Dr. Grice opined that Pride was competent to stand trial. No other expert testimony was presented by either party.

On the basis of the expert testimony (and the testimony of the state's two lay witnesses—a policeman and an assistant district attorney—regarding their observations of Pride's demeanor), the jury found Pride competent to stand trial.

On August 6, 1975, a jury convicted Pride of aggravated robbery. He was thereafter sentenced to serve in state prison not less than five nor more than 30 years. The conviction was affirmed on July 30, 1976. *Pride v. State*, 538 S.W.2d 115 (Tex.Cr.App. 1976).

On October 4, 1975, within a month after Pride's transfer to the Texas Department of Corrections to serve his prison term, Pride was sent to the comprehensive treatment center at the prison facilities for mental evaluation. Based on psychological and sociological testing in October of 1975, and psychiatric testing in April of 1976, treatment center staff members concluded that Pride was severely mentally handicapped, a condition characterized by both mental retardation and chronic paranoid schizophrenia. It was recommended that Pride be placed in an institution specializing in the treatment of mental disorders and the education of slow learners. Pride was subsequently transferred in July of 1976 to Rusk State Hospital for treatment.[1]

Pride applied for state habeas corpus relief on March 2, 1978. His application was denied without hearing and without written opinion at both the state district court and the Texas Court of Criminal Appeals. Pride then petitioned the federal district court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. The writ was denied without hearing, and this appeal followed.

*Pride's Asserted Bases for Relief*

On appeal before this court, the petitioner alleged violation of his federal constitutional right to due process in support of his claimed right to federal habeas corpus relief. Specifically, the petitioner contends that he was denied federal due process by: (1) the state's failure at the competency trial to rebut sufficiently with expert testimony the petitioner's prima facie case of incompetency, and (2) the use of the same jury at the petitioner's competency trial that had served at a preceding competency trial. Additionally, the petitioner contends—although he does not so allege with particularity—that he was in fact incompetent to stand trial.[2] On the basis of the

1. At oral argument, counsel for the state of Texas stated that Pride is presently housed at the Wynne Unit (a mental health facility) of the Texas Department of Corrections.

2. While the thrust of the petitioner's federal habeas attack is directed toward the competency trial itself, we interpret the petitioner's reliance on various post-trial expert opinions (attached to the state writ application and submitted with the federal writ application) and his claim of actual incompetence as presenting for review at both the state, see *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)(the *substance* of a federal habeas claim must first be presented to state

**326**

latter contention we find merit in the petitioner's writ application, without finding it necessary to discuss the first issue.

*The Issue of Incompetency in Fact*

▉ The conviction of an accused person while he is legally incompetent violates the due process guarantees of the federal constitution. *Pate v. Robinson*, 383 U.S. 375, 377–78, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). Accordingly, a state defendant may be entitled to federal habeas relief if he can prove that he was in fact incompetent to stand trial.[3] See *Reese v. Wainwright*, 600 F.2d 1085, 1093–94 (5th Cir. 1979), cert. denied 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979); *Davis v. State of Alabama*, 545 F.2d 460, 465 (5th Cir. 1977).

▉ However, before a federal court will entertain a habeas claim grounded on incompetency at trial, it will require that the petitioner produce more than a showing by a preponderance of the evidence that he might have been incompetent in fact at the time of the state trial. *Bruce v. Estelle*, 536 F.2d 1051, 1058–59 (5th Cir. 1976). Instead, the petitioner must initially prove by clear and convincing evidence facts sufficient "to positively, unequivocally and clearly generate a real, substantial and legitimate doubt" as to the petitioner's competency at trial.[4] *Bruce v. Estelle, supra,* quoting *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973). We find that the petitioner Pride has satisfied this threshold burden of proof.

The evidence accompanying the habeas petition indicates that—within three months of his competency trial and within two months of his conviction—Pride was transferred to the Texas Department of Corrections comprehensive treatment center, where he received psychological, psychiatric, and sociological evaluations.[5] Based upon these evaluations and approximately seven months of professional observation of Pride, the assistant chief psychologist of the Texas Department of Corrections (Dr. White), recommended that Pride be placed in an institution specializing in treatment of mental disorders and education for slow learners. He was subsequently transferred to Rusk State Hospital for treatment.

The evidence also consists of the medical opinions of Dr. White and two psychologists, who observed and evaluated Pride at Rusk State Hospital. All three concluded that Pride suffered from both mental retardation and chronic paranoid schizophrenia, and could not then (at the time of evaluation) be considered competent to stand trial. Moreover, Dr. White, who observed and evaluated Pride at least a dozen times during his stay at the treatment center, concluded that Pride could not have been competent to stand trial in August of 1975.

The evidence presented thus indicates that: (1) as early as October of 1975, within three months after the trial, Pride was diagnosed as mentally defective and paranoid schizophrenic; (2) on the basis of these mental deficiencies, two medical experts

court), and federal levels the substantive issue of incompetence in fact.

3. This is so even if the habeas petitioner, as in the instant appeal, was found competent at a pretrial competency hearing. See *Reese v. Wainwright, supra.* There, the habeas petitioner was found competent at a pretrial competency hearing, then tried and convicted. Two weeks after trial, he was found incompetent to stand trial on another unrelated charge. While the court rejected the petitioner's claim of incompetency in fact for failure of proof, it recognized that the petitioner could collaterally attack his first conviction on the basis of post-trial events occurring in relatively immediate sequence to the trial. 600 F.2d at 1093–94.

4. The Supreme Court has stated the test for trial competency as follows: whether the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and possesses a rational and factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).

5. According to a psychological evaluation dated October 21, 1975, Pride was diagnosed as a paranoid schizophrenic and as mentally defective. In a psychiatric evaluation made on April 3, 1976, Pride was diagnosed as suffering moderate to severe mental retardation and chronic paranoid schizophrenia.

have determined that Pride is presently incompetent; and (3) one medical expert has concluded that Pride must have been incompetent at his August, 1975, trial. At the least, the evidence creates by clear and convincing evidence a real doubt as to Pride's trial competency sufficient to warrant further federal habeas investigation.

We therefore conclude that, on the basis of post-trial evidence presented with both the state and federal habeas petitions, the petitioner has satisfied his burden of proving facts sufficient to create a real, substantial and legitimate doubt as to his competency to stand trial in August of 1975. Pride should thus be accorded a federal evidentiary hearing to determine his competency to stand trial at that time.[6]

*The Remaining Issues*

Also directing his habeas attack to the competency trial itself as a violation of his due process rights, Pride contends that the state's evidence did not rebut his own strong medical evidence proving incompetency, and that, therefore, the jury verdict of competency was based on constitutionally insufficient evidence. The federal district court rejected the petitioner's claims, finding that any rational trier of fact—on the basis of the evidence presented at the competency trial—could have reached the same conclusion of competency as did the present jury. The sufficiency of the evidence at the competency trial presents a close issue, but we need not decide it. Even were we to find the paucity of evidence raises an issue that a incompetent person was tried in violation of his due process rights, *Reese v. Wainwright, supra,* the relief to be granted would, at most, be to

order an evidentiary hearing as to whether the accused was competent in fact at the time of trial—relief we have already determined to grant on the very issue of competency in fact.

Concerning the petitioner's claim of implied jury bias at the competency trial, we pretermit discussion of the petitioner's possible waiver of the issue for failure to object timely, see *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and discussion of the state's significant objections to the panel's granting of the petitioner's motion to supplement the appellate record with the transcript of the preceding competency hearing, see *Kemlon Products & Development Company v. United States,* 646 F.2d 223, 224 (1981) (court of appeals will not ordinarily enlarge the record to include material not before the district court). We do so because, even were the petitioner to prevail over those threshold objections to consideration of his claim, we conclude that the circumstance that the same or substantially the same jury might have served at two consecutive competency trials not involving related defendants or facts does not raise an issue of constitutional dimension. See *United States v. Riebschlaeger,* 528 F.2d 1031, 1032 (5th Cir. 1976), cert. denied, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976). (In that case, involving jury trial on the issue of guilt, the court rejected the defendants' allegation of implied jury bias founded on the state's use of jurors who had also served on juries that had convicted other defendants in cases where the same prosecutor was prosecuting and where the same defense counsel was defending and lost.)[7]

---

**6.** At the federal evidentiary hearing, Pride will have the burden of proving the fact of his incompetency by a preponderance of the evidence. *Zapata v. Estelle,* 585 F.2d 750, 752 (5th Cir. 1979) (en banc).

**7.** The case of *Everitt v. United States,* 281 F.2d 429 (5th Cir. 1960), relied on by the petitioner, is distinguishable. There the defendant was found guilty by a jury, eight of whose members had served on a jury that had convicted another indictee involved in a connected fraudulent insurance scheme of the same general nature immediately prior to the defendant's trial. The

use of the same jurors was recognized as error on appeal, however, because: (1) the jury in the prior case had been complimented by the judge for its prompt and correct verdict, and (2) the defendant was tried without counsel. The case has subsequently been distinguished on the basis that identical evidence against separately tried codefendants was presented to the substantially identical juries in the successive prosecutions. *United States v. Ragland,* 375 F.2d 471, 476, n. 2 (2nd Cir. 1967), cert. denied 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968).

*Conclusion*

Accordingly, we AFFIRM the district court's denial of habeas relief on the claim of alleged jury bias in the state court pre-trial competency hearing; but we RE-VERSE the dismissal of the petition for habeas relief on the issue that the petitioner was incompetent in fact at the time of the state court trial at which he was convicted, upon a showing by clear and convincing evidence that clearly generates a real and substantial doubt of the petitioner's competency in fact at his state trial. We therefore REMAND to the district court for an evidentiary hearing on the issue of whether he was incompetent in fact at the time of the state trial resulting in his conviction, at which hearing the petitioner will have the burden of proving by a pre-ponderance of the evidence his incompetency at the time of trial.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.