796 P.2d 610

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Bryan WERNER, a/k/a Mirrio Whan-**
**tell, Defendant–Appellant.**

No. 11569.

Court of Appeals of New Mexico.

Feb. 13, 1990.

Certiorari Denied March 22, 1990.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Jerry Todd Wertheim, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

ALARID, Judge.

The dispositive issue here is whether the defenses of insanity and inability to form a specific intent are available to a defendant in a hearing conducted pursuant to NMSA 1978, Section 31–9–1.5(A) (Cum.Supp.1989). *See also* SCRA 1986, 5–602(A), (F) (Cum. Supp.1989). In view of our disposition of this issue, it is unnecessary to address the other issue the parties have briefed. We hold the foregoing defenses are not available in a hearing conducted pursuant to Section 31–9–1.5. Accordingly, we affirm the trial court's ruling on this issue and remand this case for further proceedings.

## FACTS

The following facts are conclusive because they are based on the trial court's findings of fact, which defendant does not challenge on appeal. *See Smith v. Galio,* 95 N.M. 4, 617 P.2d 1325 (Ct.App.1980) (findings not attacked on appeal are conclusive).

In January 1988, defendant was charged with attempted armed robbery and aggravated battery—both felonies. *See* NMSA 1978, § 30–3–5 (Repl.Pamp.1984); NMSA 1978, § 30–28–1 (Repl.Pamp.1984); NMSA 1978, § 30–16–2 (Repl.Pamp.1984). In March 1988, the trial court found defendant incompetent to stand trial and ordered him committed for treatment at the Forensic Division of the New Mexico State Hospital in Las Vegas, New Mexico. *See* R. 5–602; NMSA 1978, §§ 31–9–1.1 to –1.2 (Cum.Supp.1989). Bob Pullings, a clinical psychologist at the hospital, submitted a written report to the trial court on October 20, 1988. In the report, he concluded that defendant would never become competent to stand trial. *See* NMSA 1978, § 31–9–1.3(E) (Cum.Supp.1989). The state moved for a competency status hearing pursuant to Section 31–9–1.3 and an evidentiary hearing on the issue of defendant's guilt of the crimes charged pursuant to NMSA 1978, Sections 31–9–1.4(A) and –1.5(A) (Cum.Supp.1989). In response, defendant filed a notice of intent to claim not guilty by reason of insanity and inability to form a specific intent. *See* R. 5–602(A), (F).

Following a hearing in May 1989, the trial court found that defendant was still incompetent to stand trial and there was no substantial probability that he would become ·competent in the future. *See* § 31–9–1.3(E). The trial court also found defendant to be dangerous as defined by Section 31–9–1.2(C). The trial court also disallowed the defenses of insanity and inability to form a specific intent at the hearing under Section 31–9–1.5(A), ruling that these defenses went beyond the legislative intent of the statute. The trial court certified for an interlocutory appeal the question of the availability of these defenses. *See* NMSA 1978, § 39–3–3. It also certified the question of the parties' respective burdens of proof in the event these defenses are available. We granted defendant's application for an interlocutory appeal and assigned this case to the legal calendar.

## DISCUSSION

Relying on the language in Section 31–9–1.5(A) which says, "The state and the defendant may introduce evidence relevant to the question of the defendant's guilt of the crime charged," defendant argues the legislature intended to allow the defenses of insanity and inability to form a specific intent. Defendant also relies on a similarly worded Illinois statute and Illinois case law that allow these defenses in proceedings similar to the one provided in Section 31–9–1.5(A). *See* Ill.Rev.Stat. ch. 38, ¶ 104–25(a) (1987); *People v. Burt,* 142 Ill.App.3d 833,

97 Ill.Dec. 30, 492 N.E.2d 233 (1986) (inability to possess the requisite mental state): *People v. Uppole*, 97 Ill.App.3d 72, 52 Ill. Dec. 564, 422 N.E.2d 245 (1981) (insanity).

The state, emphasizing the differences between New Mexico's and Illinois' statutory scheme, argues that Section 31–9–1.5 must be read in light of its purpose of providing an alternative to short-term civil commitment for dangerous, incompetent, criminal defendants. As further support for this argument, the state claims that New Mexico's short-term civil commitment statutes are inadequate to deal with dangerous, incompetent, criminal defendants. *See* NMSA 1978, §§ 43–1–1 to –25 (Repl. Pamp.1989). The state further argues that defendant's mental state at the time he committed the crimes is irrelevant at a hearing conducted pursuant to Section 31–9–1.5 and that the relevant issues are dangerousness and whether defendant committed the *acts* that form the basis of the charges.

 The issue is one of legislative intent. Judicial interpretation of a statute is permitted when there is doubt as to the meaning of the words used. *See New Mexico State Bd. of Educ. v. Board of Educ. of Alamogordo Pub. School Dist. No. 1*, 95 N.M. 588, 624 P.2d 530 (1981). Defendant argues that the language he relies on in Section 31–9–1.5(A) leaves no room for interpretation or construction. He characterizes the procedures set out in Section 31–9–1.5(A) as a surrogate for trial when a defendant is incompetent. But the statute does not provide a surrogate for trial; the burden of proof is relaxed to a preponderance of the evidence, and a finding that defendant committed the crimes does not result in a conviction, nor does a finding that defendant did not commit the crimes result in an acquittal. *See* § 31–9–1.5(A) to (D); *cf. Pride v. Estelle*, 649 F.2d 324 (5th Cir.1981) (conviction of legally incompetent defendant violates due process); *State v. Hamilton*, 373 So.2d 179 (La.1979) (due process requires a level of effective participation by an accused in criminal proceedings against him). *See also* Ill.Rev.Stat. ch. 38, ¶ 104–25(a) to (d) (burden of proof is

beyond a reasonable doubt and the possibility of an acquittal, including acquittal by reason of insanity, exists for an incompetent defendant). The procedure in Section 31–9–1.5 does not have all the traditional trimmings of a criminal trial that would result in a conviction or an acquittal. Moreover, other language in the statute suggests that when the legislature referred to commission of a crime, it meant the commission of the act, without regard to the mental competence of the offender. For example, Section 31–9–1.2(C) defines "dangerous" in part in terms of the defendant's "threat of * * * violating Section 30–9–11 or 30–9–13 NMSA 1978 [criminal sexual penetration offenses]," even though the only persons whose dangerousness is considered are those incompetent to stand trial and therefore likely to lack the mental capacity required to be criminally liable. *Cf.* § 43–1–3(N) (defines "likelihood of serious harm to others" in terms of likelihood that individual will "commit a criminal sexual offense") and § 43–1–12(C) (providing for civil commitment of persons presenting a "likelihood of serious harm to * * * others."). So there is doubt as to what the legislature meant when it used the words, "evidence relevant to the question of the defendant's guilt." *See* § 31–9–1.5(A); *New Mexico State Bd. of Educ. v. Board of Educ. of Alamogordo Pub. School Dist. No. 1*.

 Therefore, we look not only to the language used in Section 31–9–1.5 but also to the object sought to be accomplished and the wrong to be remedied. *See id.* We believe the purpose of the statute is twofold. By providing for dismissal of the criminal case without prejudice if the commission of the crime is not established by a preponderance of the evidence, the legislature recognizes the unfairness of indefinitely holding pending criminal charges against an incompetent defendant and gives him a limited opportunity to prove his innocence. *Cf. Jackson v. Indiana*, 406 U.S. 715, 740–41, 92 S.Ct. 1845, 1859, 32 L.Ed.2d 435 (1972) (in dicta, the Supreme Court suggested that state statutes allowing an incompetent defendant a trial to raise certain defenses that would result in

an acquittal, without permitting a conviction, are neither constitutionally required nor prohibited); Ill.Rev.Stat. ch. 38, ¶ 104–25(a) to (d); *People v. Williams,* 105 Ill.App.3d 372, 376–78, 61 Ill.Dec. 259, 263–64, 434 N.E.2d 412, 416–17 (1982) (McGloon, J., specially concurring). By providing for detention of incompetent persons who have displayed their dangerousness by committing criminal acts but who could not be properly isolated from society under the provisions of the Mental Health and Developmental Disabilities Code, the statute also serves the state's legitimate interest in protecting society from dangerous, incompetent defendants. *See Estate of Hofferber,* 28 Cal.3d 161, 616 P.2d 836, 167 Cal.Rptr. 854 (1980) (In Bank) (state has compelling interests in public safety and in humane treatment of the mentally disturbed).

States may treat presently dangerous, incompetent defendants, who have been found to have previously committed certain crimes, differently from other dangerous mentally disturbed persons. *Cf. Jackson v. Indiana* (indefinite commitment of a criminal defendant *solely* on account of his incompetency to stand trial violates due process and equal protection); *Estate of Hofferber,* 616 P.2d at 845–47, 167 Cal. Rptr. at 863–66 (an initial determination of probable cause that, *by concrete acts,* a defendant committed violent crimes that imperil the public safety coupled with his incompetence and present dangerousness permits separate legislative concern and treatment). *Compare* § 31–9–1.5(D) *with* § 43–1–12(C). This policy supports the state's interpretation of Section 31–9–1.5(A) because the issues are present dangerousness and whether defendant has previously committed criminal acts which justify separate treatment from other dangerous mentally disturbed persons. *See* § 31–9–1.5(D). *Cf. Estate of Hofferber* (same except the former class must be found to have engaged in violent criminal acts to justify different treatment).

With these considerations in mind, we believe the legislature intended to make dangerous, incompetent defendants, who have been found to have committed the *acts* that form the basis of the criminal charges, subject to long-term commitment rather than that provided in the civil short-term statute. *Cf. id.* (legislature may provide for confinement of presently dangerous, incompetent, criminal defendants, who have previously committed violent felonies, under scheme different from traditional short-term civil commitment). *Compare* § 31–9–1.5(D) *with* § 43–1–12(C); Model Penal Code and Commentaries § 4.06 alternative subsections (3) and (4) (Official Draft 1962) (1985) (supports view that only factual defenses that go to the substance of the charge should be allowed and that evidence of mental disease and defect should not be allowed at a hearing similar to that envisioned by Section 31–9–1.5). *See also Jackson v. Indiana,* 406 U.S. at 740–41, 92 S.Ct. at 1859. Defendant's interpretation of Section 31–9–1.5(A) that defenses of insanity and inability to form a specific intent should be allowed contravenes this purpose. *Cf. Estate of Hofferber.*

We therefore hold that the defenses of insanity and inability to form a specific intent are not available at a hearing conducted pursuant to Section 31–9–1.5(A). We believe the legislature intended, as it constitutionally could, to subject presently incompetent, dangerous defendants, who have committed prior criminal acts, to commitment under terms different from those for other dangerous mentally disturbed persons. *See id.*

Our holding here is also not necessarily inconsistent with the Illinois statutory scheme that expressly allows the insanity defense. *See* Ill.Rev.Stat. ch. 38, ¶ 104–25(c). We have already noted some of the differences between Illinois' statutory scheme and New Mexico's. For example, the Illinois statute requires proof beyond a reasonable doubt, and it provides for an acquittal should an incompetent defendant prevail on his insanity defense. *See* Ill.Rev.Stat. ch. 38, ¶ 104–25(b) and (c). *See also Jackson v. Indiana* (states may allow an incompetent defendant a trial to raise certain defenses that would result in an acquittal, without permitting a convic-

393

tion). However, Illinois treats those incompetent defendants, who are acquitted of a felony by reason of insanity but who are dangerous, similar to the way the state claims defendant in this case should be treated. *See* Ill.Rev.Stat. ch. 38, ¶¶ 104–25(c) & 1005–2–4(b) (1987) ("dangerous" defendant, who is found not guilty of a felony by reason of insanity, subject to long-term commitment); § 31–9–1.5(D)(1) to (4).

CONCLUSION

Based on the foregoing, we affirm the trial court's ruling that the defenses of insanity and inability to form a specific intent are not available in a hearing conducted pursuant to Section 31–9–1.5(A). We also deny defendant's request for oral argument. *See* SCRA 1986, 12–214. We remand for further proceedings consistent with this opinion.

IT IS SO ORDERED.

BIVINS, C.J., and HARTZ, J., concur.